AUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT REUTHER,

                Petitioner,                Case Number: 2:08-CV-15118

v.                                      HONORABLE AVERN COHN

THOMAS K. BELL,

                Respondent.

_____/

### MEMORANDUM AND ORDER
### DENYING PETITIONER'S MOTION FOR LEAVE TO
### AUTHORIZE DISCOVERY
### AND
### DENYING PETITION FOR WRIT OF HABEAS CORPUS
### AND
### DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

## I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Robert Reuther (Petitioner), who is currently released on parole, filed a *pro se* petition for a writ of habeas corpus challenging his conviction for extortion. Respondent, through the Attorney General's office, filed a response, arguing that Petitioner's claims are procedurally defaulted and/or without merit. Before the Court is the petition and Petitioner's motion for discovery. For the reasons which follow, the motion for discovery and the petition will be denied. A certificate of appealability will also be denied.

## II. Background

Petitioner's conviction arises from a dispute between him and a neighbor, Richard Fielding. The evidence adduced at trial showed that, on August 19, 2003,

Petitioner called Fielding and asked him to come over to his house, located in the City of Plymouth, because he needed assistance with a vehicle that would not start. Fielding went over to Petitioner's house with jumper cables. Upon arriving at Petitioner's home, Fielding noticed that Petitioner's truck was parked in the driveway with the hood open. Fielding did not see Petitioner outside, so he knocked on the front door to the house. Petitioner invited him in. Failing testified that after he sat down, Petitioner began accusing him of damaging his house by breaking a window and a screen. Failing denied causing the damage, but admitted that he had boarded up the window. Failing testified that Petitioner then pushed him with such force that the chair in which he was sitting tipped over. Failing attempted to call 911 on his cell phone, but Petitioner threw his phone. Failing then attempted to leave the home but was prevented from doing so by Petitioner. Petitioner demanded $1,000 from him, threatening to "mess up" Fielding if he did not pay. Fielding, fearing for his safety, agreed to pay Petitioner. He offered to write a check to Petitioner, but Petitioner would only accept cash.

Fielding testified that Petitioner then drove him to his bank, New Liberty Bank in Plymouth, and stood behind him while he cashed a check for $1,000. Fielding wrote the word "blackmail" in the memo line of the check hoping that the teller would notice it, but she did not. After Fielding handed over the money to Petitioner, Fielding drove Petitioner back to his truck, which was parked outside Fielding's home. Fielding testified that all checks in his checkbook were written in duplicate format, with the duplicate copy of the check remaining in the checkbook. A copy of the duplicate check was admitted at trial.

Heather McGuigan testified that she was employed as a bank teller at New

2

Liberty Bank.  She was working on August 19, 2003, and cashed the check at issue.

McGuigan testified that she was familiar with Fielding as a frequent customer of the

bank.  She noticed that on August 19, 2003, his demeanor was markedly different than

usual.  He typically was talkative and friendly.  In contrast, on this visit, he was quiet,

withdrawn, and she noticed his hands were shaking.  She asked him if he was okay.

He said that he was, but she was not necessarily reassured by his response.

Police officer Brian Browning testified that he was dispatched to Fielding's home

on August 19, 2003 at approximately 3:00 p.m.  He noted that Fielding had a quarter

size abrasion on his left forearm that looked fresh.

Petitioner did not testify in his own defense.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of

extortion.  On May 26, 2004, he was sentenced to five to 20 years' imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised the

following claims:

> I.   The trial court erred in rejecting on hearsay grounds testimony from
>      proposed defense witnesses who heard the victim acknowledge he owed
>      a debt to defendant Reuther.
>
> II.  The jury's verdict on the extortion charge is against the great weight of the
>      evidence.

The Michigan Court of Appeals affirmed Petitioner's conviction.  *People v.*

*Reuther*, No. 256479 (Mich. Ct. App. Feb. 9, 2006).  Petitioner did not seek leave to

appeal this decision in the Michigan Supreme Court.  *See* Affidavit of Corbin R. Davis,

Clerk, Michigan Supreme Court, 3/3/09.

Petitioner filed in the trial court a motion for an order directing the bank to release

3

a copy of the check to him.  The trial court denied the motion.  Petitioner filed a delayed

application for leave to appeal the trial court's denial of the motion in the Michigan Court

of Appeals, raising the following claim:

> The trial court committed an abuse of discretion in refusing to order a bank
> to release to the defendant a copy of the check that was introduced in
> evidence at trial.

The Michigan Court of Appeals denied leave to appeal.  *People v. Reuther*, No.

274280 (Mich. Ct. App. Dec. 21, 2006).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court

challenging the trial court's denial of his motion to order the bank to release a copy of

the check.  The Michigan Supreme Court denied leave to appeal.  *People v. Reuther*,

478 Mich. 925 (2007).

Petitioner then filed a motion for relief from judgment in the trial court, claiming

that he received ineffective assistance of trial and appellate counsel, and that his right to

due process was violated because he was not permitted to review the bank's copy of

the check at issue in this case.  The trial court initially dismissed the motion on

procedural grounds.  *People v. Reuther*, No. 03-013693 (Wayne County Cir. Ct. June

13, 2007).  The trial court granted a request for reconsideration and denied the motion

on the merits.  *Id.* (Dec. 6, 2007).

Petitioner sought leave to appeal in the Michigan Court of Appeals, raising the

following claims:

> I.    Appellant Reuther was denied the effective assistance of counsel
>       guaranteed by the federal and state constitutions where his trial attorney
>       failed to prepare for trial, failed to investigate, failed to locate and bring in
>       a witness who could testify to prior false charges being brought by
>       complainant Failing, failed to lay a foundation under M.R.E.613(B) for

4

proposed defense witnesses, and gave an incoherent closing statement.

II.     Appellant Reuther's right to due process of law under the state and federal constitutions was denied, and continues to be denied, by the failure of the state courts to allow him to view a copy of the original of the check at issue in this case to determine whether the complainant had written "blackmail" on the check at the time of its presentation.  The answer to this question, easily available, might have a substantial impact on the credibility assessment in this one-on-one credibility contest.

III.    Appellant Reuther was denied his due process right to a fair trial under the state and federal constitutions where the trial court's expressed bias toward Mr. Reuther and his trial defense counsel caused her to conduct the proceedings in a manner which interfered with the presentation of the defense. This clearly expressed bias continues to operate to the detriment of Mr. Reuther as the trial court, without stating reasons, is refusing to allow discovery of a critical piece of physical evidence.

IV.    Appellant Reuther was denied his constitutional due process right to present a defense where the trial court restricted critical impeaching evidence through evidence rulings.

V.     Appellant Reuther was denied the effective assistance of counsel guaranteed by the federal and state constitutions where his appellate counsel neglected strong, critical issues which must be seen as significant and obvious.

The Michigan Court of Appeals denied leave to appeal.  *People v. Reuther*, No.

282855 (Mich. Ct. App. July 8, 2008).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court,

raising the same claims raised in the Michigan Court of Appeals.  The Michigan

Supreme Court denied leave to appeal.  *People v. Reuther*, 482 Mich. 1069 (Mich.

2008).

Petitioner then filed the pending petition for a writ of habeas corpus.  He raises

the following claims:

I.     Ineffective assistance of trial counsel.

5

II.     Conviction obtained in violation of due process of law.

III.    Petitioner was denied a fair trial in contravention of his due process right.

IV.     Petitioner was denied his due process right to present a defense.

V.      Petitioner was denied the effective assistance of appellate counsel.

### III.  Petitioner's Motion for Leave to Authorize Discovery

As noted above, Petitioner has filed a motion asking the Court to order Liberty Bank to release to him a copy of the original check cashed by Failing.  "A habeas petitioner, unlike the usual civil litigant, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Rather, a petitioner is entitled to discovery only if the district judge finds "good cause" for such discovery.  Rule 6, Rules Governing Section 2254 Cases in the United States District Courts.  In order to establish "good cause" for discovery, a petitioner must establish that the requested discovery will develop facts which will enable him to demonstrate that he is entitled to habeas relief.  *See Bracy*, 520 U.S. at 908-09.  The burden is on the petitioner to establish the materiality of the requested discovery.  *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

Here, the information sought will not develop facts which will enable Petitioner to establish his entitlement to relief.  *See Williams v. Bagley*, 380 F.3d 932, 976 (6th Cir. 2004).  Accordingly, the motion is denied.

### IV.  Standard of Review

Section 2254(d), Title 28, imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody

6

> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication

of a petitioner's claims unless the state court's decision was contrary to or involved an

unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144

F.3d 429 (6th Cir. 1998).  Additionally, this court must presume the correctness of state

court factual determinations.  28 U.S.C. § 2254(e)(1); see also *Cremeans v. Chapleau*,

62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings

unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the

"contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's]
> clearly established precedent if the state court applies a rule that
> contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts that are
> materially indistinguishable from a decision of this Court and nevertheless
> arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United

States Supreme Court held that a federal court should analyze a claim for habeas

corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 410-11.

## V.  Analysis

### A.  Procedural Default

Respondent argues that all of Petitioner's claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Here, the interests of judicial economy are best served by addressing the merits of these claims.

### B.  Ineffective Assistance of Counsel

8

Petitioner first claims that habeas relief is warranted because he received ineffective assistance of counsel.  Specifically, he says that counsel was ineffective in failing to conduct an adequate investigation, failing to locate witnesses, failing to lay a proper foundation for proposed defense witnesses, and giving an incoherent closing argument.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  *Id.* at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  A court's review of counsel's performance must be "highly deferential."  *Id.* at 689.  Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*.  *Knowles v. Mirzayance*, __ U.S. __, 129 S. Ct. 1411, 1419 (2009).  "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher

9

threshold." *Id.* at __, 129 S. Ct. at 1420 (internal quotation omitted).

Petitioner argues that counsel's pretrial investigation and preparation were insufficient. The trial court denied this claim when denying Petitioner's motion for relief from judgment. The trial court held that counsel's investigation was not inadequate and that Petitioner was not prejudiced by any of counsel's actions.

"[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchison v. Bell*, 303 F.3d 720, 748-49 (6th Cir.2002) (*citing Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997) and *Martin v. Mitchell*, 280 F.3d 594, 608 (6th Cir. 2002)). Petitioner argues that counsel should have investigated and called to testify a witness, Jackie Sandlin, who would have testified as to the complaining witness's credibility. In fact, the trial transcript shows that the trial court indicated that such testimony was not admissible under state evidentiary rules. Additionally, counsel's failure to request a bank copy of the check at issue did not prejudice Petitioner because the trial court denied a subsequent request for the bank copy and there is no indication that the result would have been different had the request been made sooner. Other than a general assertion, Petitioner has failed to present any additional evidence or argument showing how counsel's alleged failure to investigate would have resulted in evidence tending to exculpate him or assist in his defense in order to demonstrate a "reasonable probability" of a different outcome.

Next, Petitioner claims counsel was ineffective in failing to lay the proper foundation for testimony from witnesses who would have testified that Failing had

10

agreed to compensate Petitioner for damage done to Petitioner's property.  On direct

appeal, the Michigan Court of Appeals held that this evidence was properly excluded

because, even if a proper foundation had been laid, it related to a collateral matter.

Given that the state court held that this evidence was properly excluded, Petitioner

cannot show that his trial counsel was ineffective in failing to achieve its admission.

Finally, Petitioner argues that defense counsel's closing argument was woefully

inadequate.  Counsel's closing argument was short and workmanlike, but not without

impact.  He highlighted the prosecution's high burden in establishing guilt, the

inconsistencies in Failing's statements to police and his trial testimony, Failing's failure

to seek help when he was in the safety of the bank, and that the prosecution's case was

based almost exclusively on Failing's testimony.  After reviewing the closing argument in

the context of the evidence presented at trial, counsel was not ineffective.

### C. *Brady* Violation

Petitioner next claims that his right to due process was violated when the

prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to produce a copy

of the original check at issue in this case.  Petitioner argues that the original check may

have shown that the notation "blackmail" shown on Fielding's duplicate check was

written after-the-fact and not on the check that was cashed at the bank.

To demonstrate a Brady violation, (1) "[t]he evidence at issue must be favorable

to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that

evidence must have been suppressed by the State, either willfully or inadvertently;" and

(3) "prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

"There is no Brady violation where a defendant knew or should have known the

11

essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotation marks omitted).

In his motion for production of the check filed in state court, counsel for Petitioner represented that New Liberty Bank is the repository of the original check. He did not allege that the original check or a copy of the original check was in the possession of the State. Thus, Petitioner has not shown that the State suppressed evidence in its possession and fails to establish a *Brady* violation.

To the extent that Petitioner argues that denial of this motion violated due process, denial of a discovery motion is generally "not cognizable in [a] habeas corpus proceeding [if] it raises only an issue of state procedural error and the denial did not render the petitioner's trial fundamentally unfair." *Holcomb v. Murphy*, 701 F.2d 1307, 1312 (10th Cir. 1983), *abrogated on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991); *see also Moreland v. Bradshaw*, 635 F. Supp. 2d 680, 726-27 (S.D. Ohio Apr. 10, 2009) (holding that habeas claim that trial court erred in post-conviction proceedings by denying discovery request was not cognizable on habeas review); *Miller v. Singletary*, 958 F. Supp. 572, 578-79 (M.D. Fla. 1997) ((holding that habeas claim that petitioner's right to discovery was violated when state trial court denied motion to re-depose state's key witness did not state constitutional claim, but rather was purely matter of state law and thus was not cognizable on federal habeas review).

### D. Judicial Bias

Petitioner next claims that the trial court's bias against him rendered his trial

12

fundamentally unfair.  An impartial judge is a necessary component of a fair trial.  *In re Murchison*, 349 U.S. 133, 136 (1955).  This Court is guided by the standard established by the Supreme Court in *Liteky v. United States*, 510 U.S. 540 (1994), in addressing claims of judicial bias.  In *Liteky*, the Supreme Court explained the measure of judicial conduct as follows:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Id.* at 554.

The Supreme Court cautioned that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display," do not establish bias or partiality.  *Id.* at 556

The instances cited by Petitioner to support his claim of judicial bias reflect no such bias.  The trial court's decisions were clearly formed on the basis of events occurring during the course of the proceedings, and did not display favoritism or antagonism.  The transcript shows that Petitioner was outspoken and somewhat obstreperous at times during pretrial and trial proceedings.  The transcript also shows that the trial judge was patient with and respectful of all parties.  At one point, outside the presence of the jury, the trial court discussed Petitioner's demeanor with him.  The

13

trial court cautioned him that his demeanor could negatively impact the jury's perception

of him.  The trial court also advised him not to come to court with a toothpick in his

mouth and to be mindful that jurors would be watching him throughout the trial.  The

judge's discussion with Petitioner was respectful and clearly intended to protect

Petitioner.  Overall, the record does not contain evidence of bias in any of the trial

court's actions.

### E.  Right to Present a Defense

Petitioner also claims that his right to present a defense was violated by the trial

court's evidentiary rulings.  Specifically, he challenges the trial court's exclusion of

purported impeachment testimony on hearsay grounds.

The right of a defendant to present a defense has long been recognized as "a

fundamental element of due process of law."  *Washington v. State*, 388 U.S. 14, 19

(1967).  It is one of the "minimum essentials of a fair trial."  *Chambers v. Mississippi*,

410 U.S. 284, 294 (1973).  The Supreme Court has described the "most basic

ingredients of due process of law" as follows:

> "A person's right to reasonable notice of a charge against him, and an
> opportunity to be heard in his defense -- a right to his day in court -- are
> basic in our system of jurisprudence; and these rights include, as a
> minimum, a right to examine the witnesses against him, to offer testimony,
> and to be represented by counsel."

*Washington v. Texas*, 388 U.S. 14, 18 (1967) (emphasis supplied), *quoting In re Oliver*,

333 U.S. 257 (1948).

Further, the Supreme Court described the right to present a defense as follows:

> The right to offer testimony of witnesses, and to compel their attendance,
> if necessary, is in plain terms the right to present a defense, the right to
> present the defendant's version of the facts as well as the prosecution's to

14

the jury so it may decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law.

*Id.* at 19.

While the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process."  *Id.* (internal quotations omitted).  However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused."  *Id., citing Rock v. Arkansas*, 483 U.S. 44, 58 (1987); *see also Chambers v. Mississippi*, 410 U.S. 283, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 22-23 (1967).  Because criminal defendants are guaranteed a "meaningful opportunity to present a complete defense," courts cannot exclude defense evidence under evidentiary rules that "serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote."  *Holmes v. South Carolina*, 547 U.S. 319, 325-26 (2006).

In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the Court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result.  *Davis v. Alaska*, 415 U.S. 308, 317 (1973).  Instead, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'"  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), *quoting California v. Trombetta*, 467 U.S. 479, 485 (1984).  The

15

prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-691 (1984), *quoting United States v. Cronic*, 466 U.S. 648, 656 (1984).  But, the Supreme Court has emphasized that "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983).

The Michigan Court of Appeals concluded that the evidence sought to be presented was improper under the state's evidentiary rules prohibiting impeachment of a witness on a collateral matter.  *Reuther*, slip op. at 2.  The Michigan Court of Appeals further noted that the exclusion of this evidence did not interfere with Petitioner's right to a fair trial.  Petitioner had sufficient opportunity to cross-examine Failing about the validity of his allegations and to attack his credibility based upon inconsistencies in his accounts of what transpired.  Petitioner has not shown that the trial court's ruling improperly denied him the right to present a defense or otherwise deprived him of a fundamentally fair trial.  The decision of the Michigan Court of Appeals in that regard is not an unreasonable application of federal law.  As such, Petitioner is not entitled to habeas relief on this claim.

### F.  Assistance of Appellate Counsel

Finally, Petitioner claims that appellate counsel was ineffective as cause to excuse his procedural default.  As noted above, the interests of judicial economy were best served by addressing the merits of Petitioner's defaulted claims.  Nevertheless, the Court will briefly address Petitioner's ineffective assistance of appellate counsel claim.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *Jones v. Barnes*,

16

463 U.S. 745, 754 (1983).  The Court further stated:

> For judges to second-guess reasonable professional judgments and
> impose on appointed counsel a duty to raise every "colorable" claim
> suggested by a client would disserve the . . . goal of vigorous and effective
> advocacy. . . . Nothing in the Constitution or our interpretation of that
> document requires such a standard.

*Id.* at 754.  Strategic and tactical choices regarding which issues to pursue on appeal

are "properly left to the sound professional judgment of counsel."  *United States v.*

*Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Petitioner argues that appellate counsel was ineffective in failing to raise on

direct review the claims Petitioner raised on collateral review and in his habeas petition.

As explained above, Petitioner has failed to show that any of these claims were

potentially meritorious.  Therefore, Petitioner cannot show that his appellate attorney

was ineffective for failing to raise them on direct appeal.

## VI.  Conclusion

Petitioner's motion for discovery is DENIED.  Also, for the reasons stated above,

the petition is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of

Petitioner's claims, nor conclude that the issues deserve encouragement to proceed

further.  The Court therefore DECLINES to grant a certificate of appealability under 28

U.S.C. § 2253(c)(2).  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  However, if

Petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* on

appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

17

Dated:  January 24, 2011            s/Avern Cohn
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to Robert Reuther
305025, West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon
Heights, MI 49444 and the attorneys of record on this date, January 24, 2011, by
electronic and/or ordinary mail.

                                    s/Julie Owens
                                    Case Manager, (313) 234-5160

18